IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

| | | |
|---|---|---|
| RODNEY A. EDMUNDSON, | ) | Cause No. CV 07-53-H-DWM-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; BOARD OF | ) | |
| PARDONS AND PAROLE, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On August 30, 2007, Petitioner Rodney Edmundson filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. Petitioner is a state prisoner proceeding pro se.

**I. Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading.  The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Id.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order." Id.

## II. Background

Petitioner pled guilty in Montana's Eleventh Judicial District Court, Flathead County, to felony assault with a weapon. On October 20, 2005, he was committed to the custody of the Montana Department of Corrections for a period of ten years. Five years of that term were suspended. See Am. Pet. (doc. 7) at 2-3, ¶¶ 1-6; Judgment and Sentence at 2, State v. Edmundson, No. DC 05-063(C) (Mont. 11th Jud. Dist. Oct. 20, 2005) (doc. 9 att. 1). Commitment to the Department enables the Department to decide whether to place the offender in prison or in a less restrictive environment. See Mont. Code Ann. § 46-18-201(3)(d)(i) (2005). Petitioner was placed at Montana State Prison. See Am. Pet. at 1.

Petitioner apparently became eligible for parole on March 30, 2006. The Montana Board of Pardons and Parole denied Petitioner's application for parole on that date. See Br. in Supp. of Am. Pet. ("Br.") (doc. 8) at 3.

Sometime in 2007, Petitioner filed a petition for writ of habeas corpus in the Montana Supreme Court. Respondents (hereafter "the State") filed a response on or about July 24, 2007. Apparently, the Montana Supreme Court denied the petition on July 31, 2007. See Am. Pet. at 4, ¶ 15A(3).

On August 30, 2007, Petitioner submitted to this Court a motion for leave to proceed in forma pauperis and a motion for the appointment of counsel. He did not set forth any grounds for habeas relief. On September 4, 2007, the Court issued an Order permitting Petitioner to file an

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

Amended Petition on or before September 24, 2007.  Petitioner timely filed an Amended Petition on September 24, 2007, as well as a brief in support.  On December 4, 2007, he filed additional documentation in support of his petition.

**III. Petitioner's Allegations**

First, Petitioner contends that, following the Board's initial denial of parole, review of his suitability for parole was deferred for a three-year period in violation of the guidelines in effect at the time he committed the crime underlying his imprisonment.  <u>See</u> Am. Pet. at 4, ¶ 15A.  In his brief, he also complains that he has fulfilled the preconditions imposed by the Board but still will not have a progress review until March 2009.  <u>See</u> Br. at 5.

Second, Petitioner asserts that the Board's decision was not supported by "evidence with substantial merit" and so was arbitrary and capricious.  <u>See</u> Am. Pet. at 4, ¶ 15B.

Finally, in his brief, though not in his Petition, Petitioner asserts an equal protection violation. <u>See</u> Br. at 9-10.  Construing this claim in light of the other documents he has submitted, it appears that he objects to being placed at Montana State Prison rather than in a community corrections facility.  <u>See</u> Supp. (doc. 9) at 2.

For his relief, Petitioner seeks immediate release to another state under the Interstate Compact.  He also seeks a new parole hearing and asks to be placed on "administrative review."  <u>See</u> Am. Pet. at 6, ¶ 18.

**IV. Analysis**

It is possible that the federal petition is time-barred, not properly exhausted, and/or procedurally defaulted.  However, it is clear that Petitioner does not allege any colorable federal

claim and is not entitled to relief on the merits.  Accordingly, it is more efficient to proceed to the merits.  See, e.g., 28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

Federal habeas relief is available only to petitioners who are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

**A. First Claim**

Petitioner claims that the "State has denied eligibility to Petitioner for a period of three (3) years, which is not in accord with guidelines in effect at the time of commission of the crime."  Br. at 3.

The United States Constitution provides that "No State shall ... pass any ... ex post facto Law."  U.S. Const. art. I, § 10.  The Ex Post Facto Clause prohibits "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts."  California Dep't of Corrections v. Morales, 514 U.S. 499, 504 (1995). Whether any statute, regulation, or rule in this case was applied retroactively.  This depends on "whether the regulations change the legal consequences of acts completed before the effective date of the regulations."  Himes v. Thompson, 336 F.3d 848, 855 (9th Cir. 2003) (internal brackets omitted) (quoting Weaver v. Graham, 450 U.S. 24, 31 (1981)).

In Petitioner's case, there has been no change in the applicable statutes or regulations since at least 1999.  Since February 12, 1999, the pertinent regulation has provided, in pertinent part:

> When an inmate has been denied parole, written notification of that decision must be issued to the inmate by the board and must include the reason(s) for the denial and a notice of the date on which the applicant may reapply.  If parole is denied, the inmate may be required to serve until discharge.  If a parole is denied, earlier review of an inmate's case, other than the date set by the board, requires approval of the board.

Mont. Admin. R. 20.25.401(13).  Petitioner's offense was committed between January 30 and

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

February 11, 2005.  See Change of Plea Tr. (doc. 6-2) at 29:12-24, Edmundson v. Mahoney, No. CV 07-125-M-DWM-JCL (D. Mont. Nov. 29, 2007).[1]  He cannot show an ex post facto violation, because there was no change in the law governing his parole application.

Petitioner also claims that he has completed the programs the Board required but is unable to renew his application until March 2009.  That is not the case.  Mont. Admin. R. 20.25.401(13) expressly provides that review prior to the date set by the Board may be obtained with the Board's approval.  At any rate, there is no federal or state law holding that a prisoner's compliance with the Board's programming requirements entitles him to be paroled or even to obtain a new hearing.  Additionally, there is no federal or state law restricting the Board's discretion to impose whatever conditions it believes reasonably necessary to enhance the possibility that a prisoner's release will not be a "detriment to the prisoner or to the community" and that the prisoner will be "able and willing to fulfill the obligations of a law-abiding citizen."  See Mont. Code Ann. § 46-23-201(1), (5) (2005).[2]

Petitioner's first claim for relief should be denied.

**B. Second Claim**

In his second claim, Petitioner alleges that the Board's denial of his parole application was arbitrary and capricious and was not based on "evidence with substantial merit."  Assuming, for present purposes only, that Petitioner has a federally protected liberty interest in the Board's

---

[1]  A court may take judicial notice of its own records.  See, e.g., Rand v. Rowland, 154 F.3d 952, 961 (9th Cir. 1998) (en banc); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

[2]  There has been no significant change in this provision since 1995.  In that year, the Legislature abolished good-time credits and the distinction between dangerous and non-dangerous offenders, made persons sentenced to life in prison eligible for parole after 30 years, and made everyone else eligible for parole after serving one-fourth of the full term.  See 1995 Mont. Laws ch. 372 § 4.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

consideration of his parole application,[3] he was entitled to due process in the form of advance notice of the Board's intention to consider parole, a hearing on the parole application, and a written statement of the Board's reasons for denying parole.  See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 16 (1978).  Additionally, there must be "some indicia of reliability" in the evidence underlying the Board's reasons.  See Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003) (quoting Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987)); see also Superintendent v. Hill, 472 U.S. 445 (1985).

Petitioner's Judgment states that his crime was "violent" and his criminal history "extensive." See Judgment at 1.  The Judgment was issued following an adversarial criminal proceeding.  The law knows no greater due process.  Moreover, despite the fact that he committed a violent felony offense following conviction of at least four felonies and 21 misdemeanors, see Br. Exhibits at 2,[4] his prison term is only five years.  Based on the terms of the Judgment alone, both the Board's denial of parole and its imposition of preconditions to granting parole were supported by evidence substantially stronger than federal due process required.

### C. Third Claim

In connection with his allegation of an equal protection violation, Petitioner claims that "he

---

[3] No Montana inmate sentenced after March 20, 1989, has a liberty interest in parole based on the terms of Mont. Code Ann. § 46-23-201(1).  See, e.g., Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); 1989 Mont. Laws ch. 188, § 2 (eff. Mar. 20, 1989).  The Court will assume, for the sake of argument, that a liberty interest might arise under other statutes or regulations that restrict the Board's discretion.  See, e.g., Haney v. Mahoney, 32 P.3d 1254, 1256 ¶ 10 (Mont. 2001) (relying on mandatory language in statute to hold that prisoner was denied right to a hearing before the Board); Mont. Code Ann. §§ 46-23-201(3), (4), -202 (establishing time of parole eligibility and requiring specific procedures upon eligibility).  However, this is a doubtful proposition.  The 1987 statute discussed in Allen created a presumption that release on parole would be granted.  See Allen, 482 U.S. 378-79.  A guarantee that an inmate will have a hearing does not create a presumption of release.  Here, the evidence that Petitioner received due process is so overwhelming that the question of his entitlement to it is mooted.

[4] The exhibits are available in paper form only as scanning did not produce a legible copy.

fits the same criteria as other offenders who have been sentenced to the Department of Corrections, who have been afforded the opportunity to the alternative programs associated with the Department of Corrections.  The Petitioner asserts that he has not been afforded the opportunity for a parole, or other programming as other offenders have, and such deprivation of rights has occurred, under the aforementioned Equal Protection Clause."  Br. at 10.

There is no federal law entitling Petitioner to placement in a particular facility or a particular kind of facility.  See, e.g., Meachum v. Fano, 427 U.S. 215, 224 (1976); Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996) (both discussing whether petitioner/plaintiff had a liberty interest in a particular custody classification).  The purpose of Montana's statutory provision authorizing a sentencing court to commit an offender to the custody of the Department of Corrections, see Mont. Code Ann. § 46-18-201(3)(d)(i) (2005), is to enable the Department to use its discretion to decide where individual offenders are best placed.  There is no statute, rule, or regulation restricting the Department's discretion in determining what placement is "appropriate."  Montana law does not give rise to any protectable interest in or legitimate expectation of placement in a certain kind of facility.

Nor does the Equal Protection Clause demand that all persons be treated alike.  The Clause prohibits invidious discrimination, that is, discrimination based on some impermissible factor.  See, e.g., Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Petitioner has not alleged that anyone discriminated against him for some impermissible reason, nor has he shown that he was not given the full protection of the applicable laws.  Moreover, it is clearly established in the record of the case that he has an extensive criminal history and that he committed a violent offense.  See Judgment and Sentence at 1.  Placement at Montana State Prison is hardly surprising under these circumstances.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

Petitioner's equal protection claim should be denied.

## V. Certificate of Appealability

### A. Governing Law

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000). The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.  Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner ... "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").  Thus, a petitioner may obtain a COA even if he does not establish that he will prevail on the merits.  The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit.  Lambright, 220 F.3d at 1025.  Any doubt as to whether a petitioner has met the standard is resolved in his favor. Id.  The COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should *not* issue." Fed. R. App. P. 22(b)(1) (emphasis added). The Court need not explain why a certificate *should* issue. Id.

### B. Discussion

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

Petitioner has failed to allege a violation of any federal right.  There was no ex post facto violation because the statutes, rules, and regulations governing parole hearings have not changed since at least February 1999, and Petitioner was convicted for a crime committed in 2005.  Even assuming the doubtful proposition that Montana inmates sentenced after 1989 have a state-created liberty interest in parole, the Board's decision in Petitioner's case is supported by significantly stronger evidence than federal due process requires.  A sentence committing a Montana inmate to the custody of the Department of Corrections does not create a liberty interest in being placed in a community corrections facility, and federal law establishes no liberty interest in a particular custody classification.  There is no equal protection violation where a Petitioner fails to allege discrimination on a constitutionally impermissible basis; on the contrary, custody classification and parole determinations demand discrimination among persons.

Petitioner has not made a showing, much less a substantial one, that he was deprived of a federal right.  There is no reason to encourage him to proceed further.  A COA should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

The Amended Petition (doc. 7) should be DENIED on the merits.  The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.  A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

Petitioner must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."  Failure to do so may result in dismissal of his remaining claims.

DATED this 15th day of May, 2008.


/s/ Keith Strong_____
Keith Strong
United States Magistrate Judge


FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10